# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| SAUL IBARRA, | NO. EDCV 09-807 AGR |
| Plaintiff, | |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Saul Ibarra filed this action on May 1, 2009. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on May 13 and 14, 2009. (Dkt. Nos. 8-9.) On November 30, 2009, the parties filed a Joint Stipulation ("JS") that addresses the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court remands this matter to the Commissioner for proceedings consistent with this opinion.

///

///

///

///

## I.

## PROCEDURAL BACKGROUND

On February 14, 2008, Ibarra filed an application for Social Security Disability Insurance ("SSDI") benefits.  Administrative Record ("AR") 14.  On February 29, 2008, Ibarra filed an application for Supplemental Security Income ("SSI") benefits.  *Id.*  In both applications, Ibarra alleged disability beginning September 1, 2007.  *Id.*  The applications were denied initially and upon reconsideration.  *Id.*  An Administrative Law Judge ("ALJ") conducted a hearing on December 8, 2008, at which Ibarra, a medical expert ("ME"), and a vocational expert ("VE") testified.  AR 14, 23-38.  On February 24, 2009, the ALJ issued a decision denying benefits.  AR 14-22.  The Appeals Council denied Ibarra's request for review.  AR 1-3.  This action followed.

## II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

## III.

## **DISCUSSION**

### A. <u>Disability</u>

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. <u>The ALJ's Findings</u>

Ibarra has the following severe impairment: substance induced psychotic disorder. AR 17. Ibarra's impairment meets the criteria of Listings 12.03 and 12.09 of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Ibarra has a "marked restriction in the activities of daily living; marked difficulties in social functioning; marked difficulties regarding concentration, persistence or pace; with no episodes of decompensation of extended duration." AR 18. These restrictions "are related to and caused by [Ibarra's] substance abuse problems which continued to be evident throughout the alleged disability period." *Id.*

If Ibarra stopped the substance use, he would "continue to have a severe impairment or combination of impairments." AR 18. However, he would "not have an impairment or combination of impairments that meets or medically equals any of the impairments listed" in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Therefore, Ibarra's "substance use disorder is a contributing factor material to the determination of disability." AR 21. As a result, Ibarra "has not been disabled within the meaning of the Social Security Act at any time" following the alleged onset date. *Id.*

If Ibarra stopped the substance use, he would have the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but with

the following non-exertional limitations: no climbing of ladders, ropes or scaffolds; no unprotected heights; no dangerous machinery; no fast moving machinery; no hypervigilance required; habituated work setting; not in charge of the safety operation of others; no intense interpersonal interactions; object oriented environment; no supervision of others; and moderate stress environment with general public interactions." AR 19.

If Ibarra stopped the substance use, he would "be able to perform past relevant work as a Laborer Stores and Janitor." AR 21.

### C. Treating Psychiatrist's Opinion

Ibarra argues that the ALJ improperly rejected the opinion of Ibarra's treating psychiatrist, Dr. Kim. JS 3-4. According to Ibarra, the ALJ "failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting the treating psychiatrist's opinion regarding [Ibarra's] mental status and limitations." JS 4.

The Ninth Circuit distinguishes among three types of physicians: (1) treating physicians (who examine and treat), (2) examining physicians (who examine but do not treat), and (3) non-examining physicians (who neither examine nor treat). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An opinion of a treating physician is given more weight than the opinion of a non-treating physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Id.* However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Id.* at 632.

A non-examining physician's opinion constitutes substantial evidence when it is supported by other evidence in the record and consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). However, a non-examining

4

physician's opinion cannot by itself constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006).

"When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors, including the following: (1) length of the treatment relationship and frequency of examination;[1] (2) nature and extent of the treatment relationship;[2] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) consistency with record as a whole; and (5) the specialty of the physician providing the opinion. *See Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(d)(1)-(6).

The ALJ rejected the medical conclusions of Dr. Kim who, in a "Mental Impairment Questionnaire Form" ("Questionnaire"), found that Ibarra suffers from a "schizophrenic disorder" with the following symptoms: "delusional, sexual preoccupation, violent acting out, affect is blunted, poverty of thought." AR 257,

---

[1] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(i).

[2] "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(ii).

5

261. According to Dr. Kim, Ibarra "has been sick for many years with very low functioning level even with stable condition" and is consequently "unable to perform any kind of gainful, competitive employment." AR 260-61.

The ALJ rejected Dr. Kim's opinion because "there is no longitudinal history of treatment by which an appropriate conclusion can be derived, and because the identity of the reporting psychologist is a mystery" due to the illegible signature on the Questionnaire and the failure of the psychiatrist to print or type his name.[3] AR 20. At the same time, the ALJ gave "significant weight" to the opinion of Dr. Rath, a non-examining ME, who determined that Ibarra had "a substance induced psychiatric disorder that's controlled by medication when he's compliant and refraining from illicit substance abuse." AR 19-20, 32.

Dr. Kim did not print or type his name on the Questionnaire and his signature on the form is illegible. AR 261. The ALJ therefore concluded that the answers on the Questionnaire were "highly suspect" because "[t]here is no way to determine who exactly completed this questionnaire." AR 20. The Questionnaire, however, contains an address, telephone number and best time to call. AR 261. The psychiatrist's signature is substantially the same as the signature in Dr. Kim's medical file. *Compare* AR 261 *with* AR 265-71. Dr. Kim's identity was ascertainable from the evidence in the record. *See* 20 C.F.R. § 404.1512(e) (providing that the agency "will seek additional evidence or clarification from your medical source when the report from your medical source .

---

[3] In the JS, the Commissioner argues that the ALJ could have properly rejected Dr. Kim's findings as reported in the Questionnaire because they were "conclusionary" and "merely stated his or her opinion" without offering detailed support. JS 5. It is permissible for an ALJ to prefer an opinion supported by specific clinical findings and an explanation thereof over a check-off type of form lacking an explanation of the basis for the conclusions. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). The ALJ did not articulate this as a basis for rejecting Dr. Kim's diagnosis, however, and therefore it cannot serve as a ground for affirming the ALJ's determination. A court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630.

6

. . does not contain all the necessary information . . . . We may do this . . . by telephoning your medical source."). The ALJ's rejection of Dr. Kim's opinion based on an inability to determine his identity is not supported by substantial evidence.

The ALJ also rejected Dr. Kim's opinion because there is no longitudinal history of treatment. AR 20. The "[l]ength of the treatment relationship and the frequency of examination" are legitimate factors that an ALJ may consider in determining the weight to give a medical opinion. 20 C.F.R. § 404.1527(d)(2)(ii); *Orn*, 495 F.3d at 631. The Questionnaire, which Dr. Kim completed on June 17, 2008, reflects that Dr. Kim met with Ibarra every two to four weeks between Ibarra's initial visit on April 10, 2008 and his last visit prior to the completion of the Questionnaire on May 27, 2008. AR 261. In addition, the record contains Dr. Kim's medical records for Ibarra. According to the file, Dr. Kim saw Ibarra eight times between April 1, 2008 and September 17, 2008. AR 265-79. The file also contains a screening interview and assessment by Dr. Williams on March 25, 2008. The screening interview contains Ibarra's symptoms and history of psychiatric hospitalizations. AR 274-78. The ALJ does not address Dr. Kim's medical file and appears to be unaware that the file came from the Questionnaire's author. The rejection of Dr. Kim's opinion on the ground that the record did not contain a longitudinal history of treatment is therefore not supported by substantial evidence.

Given that the ALJ did not address Dr. Kim's medical file, remand is appropriate. *See Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (remand for additional investigation or explanation is generally the proper course when a court reverses an administrative agency determination). On remand, the Commissioner may reconsider Dr. Kim's opinion in light of the medical file and may take any other steps he deems appropriate, such as obtaining additional medical records.

### D. Past Relevant Work

Ibarra argues that the ALJ improperly found he was capable of performing his past relevant work as laborer stores and janitor. JS 15-19. According to Ibarra, the ALJ erred in determining that these jobs "do[] not require the performance of work-related activities precluded by [Ibarra's] residual functional capacity." JS 15.

"At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as generally performed in the national economy.'" *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008) (citation omitted). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). The ALJ must make "specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Id.* at 845; Social Security Ruling ("SSR") 82-62;[4] *see also* 20 C.F.R. §§ 404.1520(e) & 416.920(e).

The VE stated that Ibarra's past relevant work consisted of laborer stores (DOT 922.687-058), an unskilled position, and janitor (DOT 382.664-010), a semi-skilled position, performed at the medium exertional level. AR 36 (citing AR 194). The VE testified that Ibarra was capable of returning to both of these positions. AR 37.

The ALJ is not required to make explicit findings as to whether a claimant can perform past relevant work both as generally performed and as actually

---

[4] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (footnotes omitted).

performed. *Pinto,* 249 F.3d at 845. Ibarra does not address his past relevant work as actually performed. JS 16-18. Ibarra testified he could perform his past work as a warehouseman. AR 35. Moreover, Ibarra did not describe his past work as involving climbing. AR 157-59. Ibarra's descriptions of his prior work may constitute substantial evidence supporting the ALJ's step four determination. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (claimant's testimony about past relevant work is "highly probative").

Ibarra argues that his RFC, which precludes climbing ladders, ropes or scaffolds, is inconsistent with the Dictionary of Occupational Titles ("DOT") description of laborer stores and janitor because the DOT states that both positions involve occasional climbing up to one-third of the time. DOT 922.687-058, 382.664.010; JS 16-17. Ibarra further argues that his RFC, which precludes him from positions involving dangerous machinery and fast moving machinery, may be inconsistent with the DOT description of janitor as using handtools, power tools, or lawnmowers. DOT 382.664-010; JS 17. The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). When there is a conflict between the VE's testimony and the DOT, Ibarra argues, the ALJ is required to ask the VE whether his/her testimony conflicts with the DOT and, if so, whether there is a reasonable explanation for any conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1234 (9th Cir. 2009); SSR 00-4p.

Because this matter is being remanded for reconsideration of Dr. Kim's opinion, the Commissioner is free to revise his RFC assessment and reconsider his step four determination if appropriate.

The Court notes that Ibarra makes three additional arguments: (1) the ALJ erroneously ignored the state agency physician's opinion, particularly those areas in which Ibarra was found to have moderate limitations; (2) the ALJ failed to consider the statements of Ibarra's sister; and (3) the ALJ posed an incomplete

hypothetical.  Again, because this matter is being remanded for reconsideration of Dr. Kim's opinion, the Court does not reach these additional issues.

## IV.
## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and the matter remanded.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED:  July 22, 2010

_____
ALICIA G. ROSENBERG
United States Magistrate Judge